### MARQUIS SHAW *vs.* AARON MITCHELL & another.

The crew of a ship, bound on a whaling voyage, signed the shipping paper, which is usual in such cases, and which contained this clause — " if the crew or either of them is prevented, by sickness or death, from performing said voyage in said ship, he or they, so falling short, shall receive of his lay or share in proportion as the time served on board is to the whole time said ship is performing her voyage " : Eight months after the commencement of the voyage, a seaman joined the ship and signed said shipping paper, and was discharged five months before the voyage was terminated. At the time of his discharge, the master gave him an order on the owners, for " the net amount of his share of oil, &c. according to his services on board said ship, agreeable to his contract specified on the shipping paper of said ship." In an action by the seaman for his share of the oil, &c. obtained by said ship, in which he claimed the whole amount, as if he had performed the whole voyage, it was *held* that the defendants might prove, by parol evidence, that the plaintiff, when he was discharged from the ship, understood that he was to receive, and agreed to receive, such part of his lay or share, as his time of service bore to the whole voyage — such evidence showing a new contract in no respect contradictory to that of the shipping paper. *Held further,* that the true construction of the order, drawn by the master, was, that the plaintiff should receive his share according to the terms of the shipping paper, during the time he served on board the ship, but not for the whole voyage nor for the residue of the voyage, after he was discharged.

Evidence of custom is admissible to explain an ambiguity in a written contract.

. ASSUMPSIT to recover of owners of the whaling ship, called the Mary Mitchell, the plaintiff's lay or share of the oil and whalebone obtained by said ship and due to him as third mate.

At the trial before the chief justice, it was agreed that the voyage commenced in July, 1835, and terminated in May, 1838 : That the plaintiff shipped at New Zealand, in March, 1836, eight months after the voyage commenced, and was dis-

charged by the master, at his own request, at the Bay of Islands in New Zealand, December 29th, 1837, being after the obtaining of oil was completed, and about five months before the termination of the voyage by the arrival of the ship at Nantucket.

It was also agreed that the plaintiff signed the shipping paper, at the time he entered, in March, 1836. The shipping pape was in the usual form prepared for those who shipped at Nantucket, and contemplated a voyage to be completed on the return of the ship to Nantucket. It was the same paper which was signed by the rest of the officers and men at Nantucket, and carried out in the ship. The original was not to be found, but a duplicate was produced, which was agreed to be a true copy of that signed by the plaintiff, and in which was this clause : " If the crew, or either of them, is prevented by sickness or death from performing said voyage in said ship, he or they, so falling short, shall receive of his lay or share in proportion a⁷ the time served on board is to the whole time said ship is performing her voyage." The share of the plaintiff was one six-tieth.

The plaintiff also offered in evidence an order signed by the master, Samuel Joy, dated at Bay Islands, New Zealand, Dec. 29th, 1837, addressed to Samuel B. Tuck, one of the defendants, and requesting him, on the arrival of the ship Mary Mitchell at Nantucket, to pay the plaintiff or his order, " the net amount of his share of oil and whalebone, according to his services on board said ship, agreeable to his contract specified on the shipping paper of said ship."

It appeared that the vessel had obtained about 300 barrels of oil before the plaintiff shipped, and that she obtained the whole of the residue of her cargo of oil and bone, after he shipped and before he was discharged.

Upon these grounds, the plaintiff claimed to recover the net amount of one sixtieth of the earnings of the ship, obtained after the time of his shipment, without any deduction for the time that elapsed before he entered on board or after he had obtained a discharge by the voluntary act of the master.

The defendants, on the contrary, contended that the plaintiff

was entitled to recover only such proportion of his lay as his time of actual service bore to that of the whole voyage ; and they paid $ 280 into court, under a rule of the court of common pleas. The question was, whether the plaintiff was entitled to more.

The defendants offered the depositions of the master, the cooper, and a boatsteerer of the ship ; and also the depositions of two other witnesses as to the custom of the trade. The general tendency of the evidence was to prove, 1st. That in point of fact when the plaintiff shipped, he agreed to take such part of his lay as his time of service should bear to that of the whole voyage, and that he should be discharged at any time on his request. 2d. That it is customary so to settle lays under such circumstances. 3d. That at the time of the plaintiff's discharge, it was understood and will appear by the terms of the order which the master then gave him ; by the circumstances, which then occurred between the plaintiff and the master, as testified by the latter ; and by the usage of the trade, in the like or analogous cases ; that a deduction ought to be made from the plaintiff's lay for the time which elapsed between the time of his discharge and the termination of the voyage.

This evidence was objected to.

The counsel for the defendants contended, 1st. That the shipping paper signed by the plaintiff, though it showed his rank and determined his lay, did not show or provide for the mode or principle upon which his lay was to be adjusted in case of shipment after the commencement, and discharge before the termination of the voyage ; and that it was competent for the defendants to show, by parol evidence, the understanding and agreement of the parties, and the established custom of the business in relation to the principle of adjustment, in such case 2d. That there was an ambiguity, in relation to the principle of adjustment, in the written contract ; and that parol evidence of agreement and custom was admissible to explain it. 3d. That at the time of the plaintiff's discharge, he agreed to the princi ple of adjustment contended for by the defendants, thereby waiving any previously existing contract.

The judge proposed to rule that all that part of the evidence offered, which tended to prove a parol agreement at the time of the shipment, and which would alter or vary the terms of the written agreement, and also any evidence of custom or usage, which had the same tendency were not admissible ; but that it was competent to prove an express or implied agreement, at the time of the discharge, that the plaintiff would, in consideration of such discharge, relinquish a part of the lay which would be due to him, by the terms of the written contract, if he had per-formed it.

All the evidence being in writing, and contained in the ship ping paper, the order, and the depositions enumerated, it was agreed by the parties to take a verdict for the plaintiff for a nominal sum by consent, subject to be altered, or amended and revised, so as to stand as a verdict for the defendants, according to the opinion of the whole court. 1st. The court will consider and determine what part of said evidence is admissible, and draw such inferences from that which is competent, as a jury ought to draw. 2d. The court will consider and decide wheth-er any, and if any, what deduction ought to be made from the plaintiff's lay, by reason of any of the facts thus duly proved, and ascertain the rule by which the plaintiff's lay should be computed.

And it was agreed by the parties, that when the principle, upon which the plaintiff's lay is to be computed, should be de-termined by the court, an assessor should be appointed by the court, unless agreed upon by the parties, to ascertain how much was due to the plaintiff at the time of the commencement of the suit. If it exceeds the amount of the sum paid into court, the verdict was to be amended accordingly, and judgment rendered thereon for the plaintiff with costs. If the amount does not ex-ceed the sum paid into court, the verdict was to be amended and revised, so as to stand as a verdict for the defendants, and judg-ment rendered thereon with costs.

*Coffin,* for the plaintiff. The plaintiff claims on his contract of shipment, under which he is entitled to $\frac{1}{60}$th of the net pro-ceeds of the voyage. There was no provision in that contract

for a *pro rata* payment, except where the seaman should be pre-
vented "by sickness or death" from performing the whole
voyage, and it cannot be contradicted or varied by parol evi-
dence. *Peisch* v. *Dickson*, 1 Mason, 10. *Parkhurst* v. *Van
Cortlandt*, 1 Johns. Ch. 273. *Stevens* v. *Cooper*, 1 Johns. Ch.
429. *Clarke* v. *Russel*, 3 Dall. 424. *Mc Kinney* v. *Leacock*,
1 S. & R. 27. *Gilpins* v. *Consequa*, Peters C. C. 85.

*Colby*, for the defendants. The plaintiff cannot, by virtue
of the shipping paper, recover the amount which he demands.
His special case is not provided for in that paper, which, at
most, contains only part of his agreement with the defendants.
Parol evidence was therefore admissible to show the additional
agreement between the parties at the time of the plaintiff's dis-
charge from the ship. *Munroe* v. *Perkins*, 9 Pick. 303.
*Richardson* v. *Hooper*, 13 Pick. 446. *Mill Dam Foundery* v.
*Hovey*, 21 Pick. 417. *Jeffery* v. *Walton*, 1 Stark. R. 267.

The extrinsic facts of the case raised a latent ambiguity in
the shipping paper, which the defendants might well explain by
parol evidence — particularly by evidence of the custom in like
cases. 3 Stark. Ev. 1002, *note* (*s*). *Cutter* v. *Powell*, 6
T. R. 320. *Bradley* v. *Washington &c. Steam Packet Co.*
13 Pet. 89. 1 Phil. Ins. (1st ed.) 15 – 18. 2 Stark. Ev. 450,
454.

WILDE, J. We think it very clear that the parol evidence,
so far as it related to the plaintiff's agreement at the time of his
discharge from the ship, was rightly admitted at the trial. This
evidence is in no respect contradictory to the written contract.
It is evidence of a new contract, made on a good consideration,
and is binding on the parties.

On the written contract, no action can be maintained, as it has
not been performed on the part of the plaintiff. He shipped
eight months after the voyage commenced, and was discharged
four or five months before it terminated. The parol agreement,
therefore, as to his discharge, is essentially necessary to the
maintenance of the action. But if it were otherwise, the parol
evidence does not contradict in any respect, the written contract.
It proves a subsequent contract, and whether that is or is not

conformable to the contract made when the plaintiff signed the shipping paper, is immaterial. As to the proof of a custom to settle lays according to the terms of the parol agreement, that was undoubtedly admissible to explain any ambiguity, if there were any, as to the principle of adjustment. That evidence, however, was offered for the purpose of explaining an ambiguity in the written contract, and is not necessary to aid the construction of the parol agreement, the proof of which is sufficient without any evidence of custom. The master's order on the defendants was to pay to the plaintiff the net amount of his share according to his services on board the ship, agreeably to his contract specified in the shipping paper. The meaning and construction of this order are sufficiently clear. The plaintiff was to receive his share according to the terms of the shipping paper, during the time he served on board the ship, but certainly not for the whole voyage, nor for the residue of the voyage after he was discharged. He is entitled to his lay in proportion as his time of service bears to that of the whole voyage. According to the agreement of the parties, an assessor is to be appointed to compute the plaintiff's claim, on this principle.